Frank **THORNTON**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 18265.

United States Court of Appeals
Fifth Circuit.

May 18, 1961.

Wm. T. Brooks, Wm. L. Gower, Atlanta, Ga., for appellant.

Charles D. Read, Jr., U. S. Atty., John W. Stokes, Jr., J. Robert Sparks, Asst. U. S. Attys., Atlanta, Ga., for appellee.

Before RIVES, CAMERON and WISDOM, Circuit Judges.

PER CURIAM.

This is an appeal from a conviction on all counts of a four-count indictment charging violations of the liquor laws. The only point raised on appeal is that the court below erred in failing to direct a verdict of acquittal. From the evidence received at the trial, the jury could have believed the following.

On or about March 26, 1958, Curtis Armour, a paid informer for the Anti Moonshine League, a private organization, called on the defendant Frank Thornton, also known as Buddy Gloss, at the latter's place of business, "B's Barbecue Rib Shack." At that time Armour spoke to Thornton "about getting some whiskey." The two talked about how much whiskey Armour wanted and the price. Armour said he could use about twenty-five to thirty gallons a week at a price of $5.50 per gallon. Payment was agreed to be made each Monday for the purchases made the preceding week. Thornton also gave Armour the telephone number at the Rib Shop.

The next day or so Armour called the number that Thornton had given him— the number of the Rib Shop.[1] Armour asked for Buddy Gloss, an alias of appellant Frank Thornton. The answering voice identified the speaker as "Buddy." "Armour asked him if he could send him two cases that night. And the voice answered that no, the boys were already on their way, and told him that he could let him have it if he would get a car and come after it." As it turned out, Armour obtained no liquor that night. In the course of the conversation, the party who identified himself as Buddy supplied Armour with his home telephone number, which number proved to be the same as that at the residence of the appellant Frank Thornton.[2]

On March 31, Armour called the Rib Shop number, "asked if he could send

1. In each of the telephone calls in this case the number was dialed by a revenue agent and the telephone receiver was then handed to Armour. The agent either shared the receiver with Armour or listened to the conversation on an extension phone.

2. This number was listed in the name of the appellant's wife.

him two cases that night and the voice answered, No, that he had checked his list and he wouldn't have but three or four gallons left over."

On or about April 8, Armour called Buddy at home and Buddy assured Armour that he would be supplied with moonshine the following evening.

At about 7 P.M. on April 10 or 11, 1958, Hubert Fitts, a State Revenue Agent, was given fifty-five dollars by Federal Alcohol and Tobacco Tax Agent Pettway and accompanied Curtis Armour to purchase liquor. Upon arrival at the Barbecue Shack, Armour paid the appellant Thornton $27.50 for five of the gallons which would be obtained that night. The other $27.50 was to be paid the following Monday. Fitts and Armour were then told to accompany Carey Willingham, a defendant below who did not appeal his conviction. Willingham delivered the liquor to Fitts and Armour. At 11 P.M. Fitts and Armour returned to Agent Pettway's house with ten gallons of nontaxpaid whiskey.

On April 13, Armour called Thornton's home number. Armour asked for Buddy, the speaker identified himself as Buddy, and Armour requested that he stop by the next morning to pick up some money for previously obtained liquor. The next day Milton White ("Peewee"), a defendant below who did not appeal, stopped at Armour's house and picked up the money. As White was leaving, Armour said: " 'Tell Buddy to send me ten more gallons Wednesday night,' And Peewee said, 'Okey'." White drove a car which Thornton had been seen driving on previous occasions.

On April 16, Armour placed a call to the Rib Shop number. Armour told Buddy that he could use another ten gallons. Buddy answered that Armour should come over and get it. Fitts and Armour went to the Barbecue Shack. Carey Willingham again led Fitts and Armour to the spot where the illicit liquor was cached and delivered ten gallons

to them. At 9:30 P.M. Fitts and Armour returned to Agent Pettway's house with ten gallons of moonshine whiskey.

On Sunday, April 20, Armour called Buddy at the Barbecue Shack and asked "if he could come by around eleven thirty the next day and pick up his money, and the voice said that he would try to get there." On April 21, at about 12:05, a car driven by Carey Willingham and occupied also by appellant Thornton drove up to Armour's residence. Armour went out to the car and "handed some bills into the car."

On May 3, Armour called the Rib Shop number, identified himself and inquired about the availability of ten gallons of moonshine. The voice replied, "come on over." Fitts and Armour left for the Rib Shop. A few minutes after they arrived, Carey Willingham came over to their booth. "He said, 'I already have you down for ten, Buddy's told me about it.'" As Fitts, Armour and Milton White ("Peewee") left the Barbecue Shack, they met the appellant Thornton who told White to get in the car with Fitts and Armour and show them where "the delivery would be made."

On May 5, Armour called Thornton's residence and asked "Buddy" if he was coming over to pick up his money. Frank Thornton arrived at Armour's residence shortly thereafter. Armour walked up to him, handed him $55.00, and Thornton drove off.

■■ This record contains sufficient evidence to support the jury's findings that Frank Thornton was an aider and abettor in the offense of possessing and selling untaxed distilled spirits on or about April 11, 1958, April 16, 1958, and May 3, 1958. In addition, the jury could reasonably have found that Frank Thornton was a member of a conspiracy whose object was the possession, transportation, removal, deposit, concealment and sale of nontaxpaid distilled spirits.

The judgment of the district court is Affirmed.